IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LEE COUNTY, ALABAMA COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 3:21-cv-669-ECM (WO) |
| CREEKWOOD RESOURCES LLC, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Lee County, Alabama Commission ("County") filed suit against CreekWood Resources, LLC ("CreekWood"), Highway 29, LLC ("Highway 29"), and Michael and Wanda Teel ("Teels"), in the Circuit Court of Lee County, Alabama. (Doc. 5-6). The Defendants subsequently removed the case to this Court, (doc. 5-1), arguing that jurisdiction is proper under 28 U.S.C. § 1332 because the amount in controversy requirement is met, and because though the parties are not completely diverse, the in-state defendants are fraudulently joined and should not be considered for diversity purposes.

Unsurprisingly, the County disagrees and now seeks a remand to state court, arguing that this Court lacks jurisdiction over the dispute because the Defendants are wrong on both points.

(Doc. 9).  Because the Court finds the Teels are not fraudulently joined, and thus that complete diversity does not exist, the County's motion to remand is due to be GRANTED.[1]

## II. BACKGROUND

The land of Lee County, Alabama is verdant and lush, with flowing streams, still lakes, and rare species.  The area is cut through by Halawakee Creek, a "[f]ree-flowing accessible stream of significant historic value" that feeds Lake Harding and the Chattahoochee River at its end. (Doc. 2, para. 21). The creek's watershed supplies the region with surface water, groundwater, and easy sites for recreation and relaxation.

The land of Lee County is also, perhaps to the County's chagrin, rich with granite. Millions of tons of granite lie below, abutting the aquifers on which Lee County residents rely. That the land brims with water and stone pits these litigants against one another:  CreekWood and Highway 29 seek to develop the land into a granite quarry; the County seeks to stop them. To that end, the County asserted claims of unreasonable water use, nuisance, and threatened interference and degradation of property subject to a public trust against CreekWood, Highway 29, and, of key importance here, the Teels in Lee County Circuit Court.  The County asked the court to declare that the quarry violated various Alabama code provisions and to enjoin all quarry-related activities.  Shortly after the case began, all four defendants removed the case to this Court.

The Defendants come here from a variety of states.  The Plaintiff Lee County, Alabama Commission is a governmental entity established under ALA. CODE § 11-1-2 and is a citizen of

---

[1] Since the Court finds the Teels are not fraudulently joined and thus that complete diversity does not exist, it does not address the amount-in-controversy arguments forwarded by the parties.

Alabama. CreekWood is a limited liability company with a single member domiciled in Kentucky. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen."). Highway 29 is an LLC "composed of members domiciled in Kentucky, Georgia, and Louisiana." (Doc. 4, para. 17). The Teels are a married couple living in Alabama.

More importantly, the Teels are or were—their status is not yet clear—owners of a plot of land in Lee County that is adjacent to the proposed quarry site. In January 2021, the Teels "purported to sell" this property to Highway 29 by statutory warranty deed. (Doc. 5-6, para. 51). That deed was delivered to Highway 29.

However, the Teels did not and do not reside on that property. Instead, the property is occupied by Summer Lewis and Jerome Owsley, a separate couple who claim they have a valid Lease Purchase Agreement with Michael Teel. Before Michael Teel completed the purported sale to Highway 29, Lewis and Owsley sued Teel in Lee County Circuit Court, asking the court to stop Teel from re-taking the property and to transfer it to them instead. Lewis and Owsley later asserted added claims of breach of contract and tortious interference against CreekWood and Highway 29. That suit remands pending and is set for trial in September of 2022.

Back in this Court, the County now moves to remand the case to Lee County Circuit Court. It argues that the lack of complete diversity here is obvious: both it and the Teels are citizens of Alabama, and so this Court lacks jurisdiction over these state claims. The Defendants argue instead that the County can assert no real claim against the Teels and so the couple is fraudulently joined and must be ignored for purposes of diversity jurisdiction.

## III. ANALYSIS

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 911 (11th Cir. 2014) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A federal court may hear a case if the amount in controversy exceeds $75,000, and the parties to that case are citizens of different States. 28 U.S.C. § 1332(a)(1). If these two requirements are met, but the case was nevertheless filed in a state court, federal law gives defendants the right to remove the case to federal court. 28 U.S.C. § 1446. When removal jurisdiction is contested, "federal courts are directed to construe removal statutes strictly" and "all doubts about jurisdiction should be resolved in favor of remand to state court." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999). Moreover, "in evaluating a motion to remand, the removing party bears the burden of demonstrating federal jurisdiction." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998)).

For diversity jurisdiction under § 1332 to be proper, there must be complete diversity: every plaintiff must be diverse from every defendant. *See Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005). Ostensibly, that is not the case here—the County and the Teels are residents of the state of Alabama. However, the Defendants urge the Court to ignore the Teels' citizenship in evaluating complete diversity. Because, the Defendants argue, the Teels have been named "solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant[s] and deny any motion to remand the matter back to state court." *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

4

A defendant added solely to defeat federal diversity jurisdiction is fraudulently joined. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs*, 154 F.3d at 1287.  A defendant is fraudulently joined when (1) there is "no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant[;]" (2) "when there is outright fraud in the plaintiff's pleading of jurisdictional facts[;]" or (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Id.*  The Defendants assert the first:  that there is no possibility the County can prove a cause of action against the Teels.

In doing so, the Defendants shoulder a "heavy" burden. *Pacheco de Perez*, 139 F.3d at 1380.  The County "need not have a winning case against the [Teels]; [it] need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (emphasis in original).  The Defendants must therefore prove, by clear and convincing evidence, that no such possibility exists. *Henderson*, 454 F.3d at 1281 (citation omitted).  To determine if the Defendants met this burden, the Court must look to "the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties[,] . . . must evaluate factual allegations in the light most favorable to the plaintiff and [must] resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez*, 139 F.3d at 1380 (citations omitted).  The Court is "not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538 (quotations and citations omitted).

The Defendants believe they have met their burden.  They argue that the County has not, and cannot possibly, assert a cause of action against the Teels because the Teels have no property interest in the quarry's land and are not otherwise quarry developers associated with this project.  They also argue that the suit pending in Lee County is of no consequence.  They submit evidence that shows that the parcel at issue in that suit "is undisputedly an adjacent piece of property outside the bounds of the [quarry] permit." (Doc. 12 at 9).  The land thus "does not involve the quarry or land leased for the quarry," (*id.*), and so no action by this Court affects the Teels or their rights, (*id.* at 12).  And besides, say the Defendants, the Teels have already transferred the deed to their land to Highway 29, irreversibly completing the transaction and extinguishing any possible interest the Teels might have had *even if* their land was related to the quarry.

The County disagrees.  It argues that it "asserts nuisance claims against *all defendants* to enjoin *all quarry-related activities*." (Doc. 10 at 18 (emphasis added)).  The County argues that because it is not clear that the Teels could properly transfer their land to Highway 29, the Teels still own it, and so can still undertake some action that would further the quarry's development.  The County maintains that "[u]ntil the Teels separate themselves from the matter by completing a proper transaction . . . they remain, as far as the County Commission can tell, putative quarry developers." (Doc. 10 at 17).

The County lists several actions it believes nuisances. Pertinent to the Teels, the County alleges that the Defendants are "acquiring and/or selling property for a quarry" over a common aquifer to interfere with county water rights, (doc. 5-6, paras. 84–88), and rendering the county roads of the area "defective, unsafe, and dangerous to the public," (*id.*, paras. 89–93), actions the County alleges will constitute a "hurt, inconvenience, or damage" to it and its

6

citizenry. For each count, the County asks the Lee County court to enjoin *all* defendants "from proceeding further with the quarry." (Doc. 5-6 at 48–49, 51, 53, 55). The Defendants must show that neither these claims, nor any other, could possibly be brought against the Teels.

To start, it is unclear that the County has statutory standing to assert the specific nuisance claims it brings. The County explains that it brings Counts II and III under Alabama Code sections 6-5-120, 6-5-121, 6-5-123, and 6-5-124. (Doc. 5-6, paras. 86–93). Section 6-5-120 defines a nuisance as "anything that works hurt, inconvenience, or damage to another." ALA. CODE § 6-5-120. Any such nuisance can be either private or public—the former limited to injuring "one or a few individuals," the latter damaging "all persons who come within the sphere of [the nuisance's] operation." *Id.* § 6-5-121. A private nuisance "gives a right of action to the person injured," whereas a public nuisance "must be abated by a process instituted in the name of the state." *Id.* Additionally, "[a]ll municipalities in the State of Alabama may commence an action in the name of the city to abate or enjoin" public nuisances. *Id.* § 6-5-122. If, however, the public (either the State or a city) chooses not to commence an action to stop a public nuisance, and such nuisance "causes a special damage to an individual," that individual may commence an action. *Id.* § 6-5-123.

None of these provisions appear to grant the *County* the right to bring a nuisance action. The County is clearly not an individual, nor a city, nor the State. Action taken in the name of the County to abate a public nuisance does not otherwise appear to satisfy the language of § 6-5-121, or to be in the name of an *individual* contemplated by § 6-5-120 or § 6-5-123.

The County appears to believe it has power to enforce Title 6's nuisance provisions pursuant to ALA. CODE § 11-3A-2, but the Court does not find that conclusion clear. Section

11-3A-2(a) grants county commissions the power to provide "for the public welfare, health, and safety of the citizens throughout . . . the county by exercising certain powers," which include "abatement of noise, unsanitary sewage, or pollution creating a public nuisance as defined in Sections 6-5-120 and 6-5-121."  However, such grant of power appears related only to the ability to pass referendums to abate the nuisance *itself* under § 11-3A-5. *See* § 11-3A-2(b).  It is unclear that § 11-3A-2 includes a right of action to ask a *court* to abate the nuisance.  Additionally, that very section specifies that the powers granted to county commissions do *not* include the ability to take "[a]ny action restricting or regulating surface mining or underground mining activities that have been granted federal or state permits." § 11-3A-2(d)(11).  The County's complaint makes clear that Highway 29 and CreekWood have received these permits. (Doc. 5-6, paras. 58, 79).  Thus, even *if* § 11-3A-2 grants the County the authority to sue in court to stop a public nuisance, seeking to enjoin a permitted mine appears to fall outside the bounds of that authority.

The County does not bring a claim under the public nuisance provision that undoubtedly provides a cause of action to Lee County for nuisance.  Section 45-41-170.04(b) states that the County "may commence a civil action . . . to abate or enjoin any action or condition which constitutes a public nuisance under this section."  That section's definition of public nuisance is much narrower than that found in Title 6:  it defines public nuisance as when an owner or his designee

> in control of a building, lot, junkyard, or other premises, . . . fail[s] to keep the building, lot, junkyard, or premises clean and free from junk and litter, including, but not limited to, discarded tires, and any materials within which water may accumulate or which may shelter or encourage the growth of insects or rodents, or materials which generate obnoxious odors, or which offend the aesthetics of the community, and which thereby cause a substantial diminution in the value of other property nearby or which threaten the health and safety of any citizen.

ALA. CODE § 45-41-170.01.[2]  Rather than any cause of action to stop "anything that works hurt, inconvenience, or damage to another," § 6-5-120, it appears that the County is directly empowered to seek court redress only for nuisances stemming from unkempt premises.[3]  The County, though citing to the provision in its complaint, (*see* doc. 5-6, para. 5(g)), nevertheless does not assert any cause of action under it.[4]

However, it *could*.  The County appears to believe, though does not assert, that this quarry, as facilitated by the Teels through the transfer of their property to Highway 29 and CreekWood, would "offend the aesthetic[s] of the community, and . . . thereby cause a substantial diminution in the value of other property nearby or . . . threaten the health and safety of any citizen." (*Id.* (quoting § 45-41-170.01)).  The Defendants have not directed the Court to, nor has the Court independently found, any caselaw that demonstrates that the Defendants' actions are unactionable under this provision.  While a land sale (*e.g.*, from the Teels to the other Defendants) appears relatively remote from premises upkeep, the Court finds that a state court *could* find a possible cause of action asserted by the County against the Defendants under this provision.

---

[2] The section also provides a definition of public nuisance related to motor vehicles, but that provision is not relevant to this lawsuit. *See* ALA. CODE § 45-41-170.02.

[3] The County appears able to commence a court action for public nuisances like the distribution of obscene material to minors, ALA. CODE § 6-5-160.1, or drug-related incidents, *id.* § 6-5-155.2, but neither is relevant here.

[4] The County also notes that it has standing because it is "authorized to make contracts for opening or cleaning out any navigable stream within the county, and for keeping the same free from obstructions." (Doc. 5-6, para. 5(f) (quoting ALA. CODE § 33-7-2)).  It is unclear how such power to enter contracts yields standing for claims unrelated to those contracts.  Similarly, that the County may have "jurisdiction over navigable streams not included within the limits of any county" since its jurisdiction extends "to the margin" of the stream does not appear to grant the County independent standing to sue for nuisance related to the polluting of streams over which it has jurisdiction. (*See id.*, para. 5(b) (quoting ALA. CODE § 11-1-3)).

All that assumes, of course, that the Teels still have some interest in the land and that the land relates to the quarry in some fashion. If both are false, no injunction regarding the quarry issued by this, or any, Court will affect the Teels, and so no cause of action could be sustained against them. The Defendants must demonstrate these two facts by clear and convincing evidence.

They do not do so. The Defendants' key argument centers on the contention that the Teels irreversibly extinguished any property interest they possessed when they delivered their land's deed to Highway 29. The Court is unconvinced. The complaint and the record make clear that Highway 29 might not have perfect title to the land the Teels transferred to them. The Defendants are currently embroiled in a suit in the very court they are trying now to avoid. The plaintiffs in that suit ask the Lee County Circuit Court to, among other things, order Michael Teel to supply clear title and transfer them the property. *Lewis v. Teel*, No. 2020-900383, Doc. 2 at 3–4, (Lee Cnty. Ala. Cir. Ct. 2020).[5] That suit is still ongoing and is set for trial in September of 2022. *Lewis*, No. 2020-900383, Doc. 212 at 2.

The Court cannot say how that suit will end, and so it cannot say with certainty that the Teels no longer possess any interest in this land. An adverse ruling against the Defendants in that suit may mean the Teels' initial sale of land to Highway 29 was invalid, and so that the Teels may be tempted to take some future step to sell the land to Highway 29 properly, free from any

---

[5] The Court may take judicial notice of any "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649 (11th Cir. 2020) (allowing the judicial notice of state court dockets and records).

interest of that suit's plaintiffs. It is exactly those types of actions the County here seeks to enjoin.

Nor is the Court convinced that by handing the deed to their land to Highway 29, the Teels forever extinguished their property interest and rendered Alabama courts powerless to undo the transaction. Though the Defendants argue that the Alabama courts will not void a property transaction where delivery of the deed has been completed, much suggests differently. Alabama caselaw teems with examples of deeds found void, even post-delivery. *See, e.g.*, *Kirkpatrick v. Jones*, 585 So. 2d 828 (Ala. 1991) (affirming a jury finding that a delivered deed was void); *Stewart v. Dickerson*, 455 So. 2d 809 (Ala. 1984) (setting aside a delivered deed as void); *Gamble v. Moore*, 176 So. 2d 35 (Ala. 1965) (same); *Newman v. Borden*, 194 So. 836 (Ala. 1940) (cancelling a delivered deed and repossessing the grantor of the property, noting that the "general jurisdiction of courts of equity to cancel void deeds . . . is not questioned"); *see also* AM. JUR. 2D *Deeds* § 163 (2021) ("The word 'void,' on the other hand, implies that the deed is invalid in law for any purpose whatsoever, such as a deed to effectuate a prohibited transaction. . . . [A] deed that is void may be collaterally attacked by anyone whose interest is adversely affected by it.").

Arguing that a court could not reverse the previous land transaction assumes the conclusion that the transaction was valid, the very point the plaintiffs in the Lee County court case contest. The Court will not here assume the same. There is a chance the Lee County Circuit Court will hold that the deed delivered to Highway 29 is void, a chance the land sale was invalid, and thus a chance the Teels retain some manner of property interest in the land at issue. That possibility sustains a possible cause of action against the Teels.

The Defendants argue that the land at issue in the Lee County case is not a part of the quarry and will sustain no quarry-related activities. In support, the Defendants submit an affidavit from Jeffrey Major, managing member of CreekWood, in which he explains that the Teels' plot is adjacent to, but *outside of*, the land permitted for the quarry. (*See* Doc. 5-3). Major contends that the "property which Summer Lewis and Jerome Owsley allege ownership of in the Lewis Lawsuit comprises no part of the property which will comprise the [quarry] . . . and is not included in the [quarry] operation in any way." (*Id.*).

However, Highway 29 either has purchased, or is attempting to purchase, that land. The record is not clear as to why. With no clearer explanation, a state court could well find that Highway 29 wanted that land for some quarry-related purpose, intertwining it with the causes of action the County here asserts and with the development actions the County here seeks to stop. Even if used only to act as a buffer, putting distance between the quarry and other properties in the area, the land will have some connection to the quarry.[6] Just because the land is not part of the quarry's permitted zone does not mean that no quarry operation will *ever* take place upon it, and the record does not sufficiently demonstrate the contrary.

Until such questions are resolved, the Court cannot say with confidence that there is *no* possibility of a cause of action against the Teels. Since it cannot do so, the Court must instead say with confidence that the Teels are not fraudulently joined.

---

[6] Indeed, in their amended complaint, Lewis and Owsley allege that CreekWood "intend[s] to take a portion of the pond on [the Teels' land at issue] and utilize it in the process of managing some of the many pollutants at the proposed quarry." *Lewis*, No. 2020-900383, Doc. 44, para. 46. It is this very alleged use that led CreekWood, as alleged by Lewis and Owsley, to tortiously interfere with the contract between the Michael Teel and themselves in the first place. The state court might find this alleged land use to be accurate.

## V. CONCLUSION

Accordingly, because the Court finds that the Teels are not fraudulently joined to defeat diversity jurisdiction, it must consider their citizenship for diversity purposes. The Teels, like the County, are citizens of the state of Alabama, and so complete diversity is lacking. Without complete diversity, this Court does not have subject matter jurisdiction over this suit. Therefore, it is

ORDERED that the Plaintiff's Motion to Remand the case to the Circuit Court of Lee County (doc. 9) is GRANTED and this case is REMANDED to the Circuit Court of Lee County, Alabama.

The Clerk of Court is DIRECTED to take the action necessary to accomplish the remand of this case to the Circuit Court of Lee County, Alabama.

DONE this 14th day of February, 2022.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE